UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES,**<br><br>**v.**<br><br>**KENNETH GRAHAM.** | No. 06-cr-478-WJM<br><br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Defendant Kenneth Graham's (the "Defendant") motion for compassionate release and reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) in light of the COVID-19 pandemic. ECF No. 31. For the reasons set forth below, the motion is **GRANTED**.

**I.      BACKGROUND**

On February 8, 2007, Defendant pleaded guilty to Counts Five and Six of a seven count Superseding Indictment for robbing a Valley National Bank in Fairlawn, New Jersey in violation of 18 U.S.C. §§ 2113(a), (d) and brandishing a firearm in the course thereof in violation of 18 U.S.C. § 924(c)(1)(A)(ii), respectively. Upon entering his guilty plea, Defendant further admitted to his armed robbery of two additional banks – the Bank of America in Belleville, New Jersey on January 7, 2006 and the PNC Bank in Clifton, New Jersey on February 16, 2006. On June 27, 2007, the Court sentenced Defendant to a term of imprisonment of 204 months. ECF No. 25.

Defendant is currently incarcerated at FCI Edgefield in South Carolina, and is expected to be released from his incarceration during either the final week of December 2020 or the first week of January 2021.[1] While incarcerated, Defendant has worked to rehabilitate himself by, among other things, earning his GED in 2014 and completing a variety of courses and programs to assist Defendant in securing gainful employment upon his release, including courses in interview preparation and in the culinary arts. *See* Cimino Cert., Ex. E. Unfortunately, Defendant, a 48 year old male, suffers from several medical conditions, including diabetes, high blood pressure, and high cholesterol, for which he receives daily medication. *See id.*, Ex. A. Defendant also states that he suffers from "chronic obesity and depression." Def. Br. at 7.

---

[1] The parties apparently disagree over the exact date for Defendant's anticipated release. Defendant states that he is expected to be released on December 29, 2020. Def. Br. at 3. The Government states that Defendant's anticipated release date is December 31, 2020. Gov. Opp. at 2, ECF No. 33. The Bureau of Prisons' own website indicates a third expected release date of January 3, 2021. *See* Find an Inmate, Federal Bureau of Prisons (last visited October 27, 2020), https://www.bop.gov/inmateloc/. The difference in these dates, however, is immaterial to the Court's analysis and conclusion.

## II.      DISCUSSION

Under the First Step Act, the Court may grant a defendant's motion for compassionate release or a reduction in his sentence if the defendant shows that (1) he has exhausted all administrative remedies prior to seeking judicial review; and (2) compelling and extraordinary reasons exist to justify such release. *United States v. Sellers*, Crim. No. 10-434 (RMB), 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020). Here, the parties do not dispute that Defendant has exhausted his administrative remedies: Defendant initially requested a reduction in his sentence based on his concerns over COVID-19 on April 21, 2020, which was denied by the FCI Edgefield's warden in a letter dated June 15, 2020. Cimino Cert., Ex. B. Because more than thirty days have passed since the request for a reduction in sentence and the subsequent denial thereof, the Court may properly consider Defendant's motion. The Court therefore focuses its analysis on the merits of Defendant's motion.

In deciding a defendant's motion for compassionate release, the Court considers whether "(1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Berry*, Crim. No. 10-051-1 (NLH), 2020 WL 4035457, at *2 (D.N.J. July 17, 2020).  Defendant argues that he should be released due to the outbreak of COVID-19, his medical conditions, the temporal proximity to his expected release date, and his rehabilitation. The Government opposes the request, arguing that both Defendant's pre-existing medical conditions as well as the risk of COVID-19 transmission are adequately managed by the Federal Bureau of Prisons' (the "BOP") guidelines, as put into place at FCI Edgefield, and that an early release would pose a danger to the safety of the community and fail to reflect the seriousness of the offenses for which Defendant is incarcerated. The Court agrees with Defendant, and will grant his motion.

### A.      Whether Compelling and Extraordinary Reasons Exist

The U.S. Sentencing Commission's Policy Statement regarding the reduction of a defendant's sentence, which provides useful guidance for the Court in assessing the Defendant's eligibility for compassionate release, identifies several non-exhaustive considerations that may support a finding of "compelling and extraordinary" reasons sufficient to warrant such reduction, including, as relevant here, a defendant's medical condition. U.S.S.G. § 1B1.13, Application Note 1. In the context of the COVID-19 pandemic, the inquiry into whether a defendant's medical conditions establish "compelling and extraordinary reasons" warranting a reduction in his sentence "has two components: (a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-101 (KM), 2020 WL 4282747, at *3 (D.N.J. July 27, 2020).

Here, Defendant states that he suffers from "diabetes, high blood pressure, high cholesterol, chronic obesity and depression." Defendant's available medical records indicate that he receives daily medication for his diabetes, high blood pressure, and high cholesterol, but there is no report or note specifically concerning Defendant's obesity and depression. *See* Cimino Cert., Ex. A. Of Defendant's medical conditions for which he is currently receiving treatment, both Defendant's diabetes and high blood pressure have been specifically identified by the Centers for Disease Control and Prevention as conditions which create or may create "an increased risk for severe illness from the virus that causes COVID-19." *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 29, 2020). The Government admits that these conditions may render Defendant less able to protect himself from severe illness caused by COVID-19, but argues that the measures taken by the BOP, including at FCI Edgefield, have minimized the risk of COVID-19 transmission. Gov. Opp. at 5. Notwithstanding the BOP's extensive and commendable efforts at limiting COVID-19 transmission within correctional facilities, however, these policies are not foolproof. Since the filing of Defendant's motion, South Carolina has seen over 20,000 new COVID-19 cases. *South Carolina County-Level Data for COVID*-19, S.C. DEP'T OF HEALTH & ENV'T CONTROL, https://scdhec.gov/covid19/south-carolina-county-level-data-covid-19 (last visited Oct. 29, 2020). With respect to FCI Edgefield itself, at least one inmate and sixteen staff members currently have active cases of COVID-19. *COVID-19 Cases*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Oct. 29, 2020). While these figures do not necessarily mean Defendant will in fact get COVID-19, the risk of such transmission is not insignificant and supports a finding of "compelling and extraordinary reasons" to grant Defendant's motion for compassionate release.

Evidence of Defendant's rehabilitation provides further support. Although a defendant's rehabilitation is insufficient, standing alone, to constitute "compelling and extraordinary reasons," it may contribute as evidence in support of such a finding. *United States v. McNair*, – F.3d –, 2020 WL 5036201, at *5 (D.N.J. Aug. 26, 2020). Here, during his incarceration, Defendant has received his GED, completed programs in anger management and to improve his mindset, and completed numerous additional programs to prepare himself to build a career following his release, including courses and certifications related to the culinary arts and food service industries. *See* Cimino Cert., Ex. E. Further, the Court is not aware of any incidents during Defendant's incarceration that suggest that Defendant is not rehabilitated.

Finally, the Court notes the close proximity between the date hereof and Defendant's expected release date. Absent a compassionate release, Defendant is expected to be released from prison in approximately two months. If Defendant's motion is granted, and Defendant is required to further quarantine before his release, the time between Defendant's compassionate release and his expected release date would be even less. Accordingly, the time remaining on Defendant's sentence is marginal when viewed next to the profound health consequences Defendant is at an increased risk of suffering if he

3

contracts COVID-19. *See United States v. Rodriquez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020). The proximity to Defendant's expected release date thus further supports a finding of compelling and extraordinary reasons to grant Defendant's motion.

### B.  Consistency with Applicable Policy Statements

The Sentencing Commission's Policy Statement provides the Court may only grant a reduction in a Defendant's sentence if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Under Section 3142(g), the Court considers the following factors in evaluating a defendant's dangerousness: (1) the nature and circumstances of the offense; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Here, the Court is troubled by both the seriousness of the offenses for which Defendant pleaded guilty and is currently incarcerated, and by Defendant's long history of criminal activity. Defendant's use of a firearm in the course of a bank robbery is, of course, a serious and violent criminal act. Likewise, Defendant's recidivism and multiples arrests and convictions for, among other things, possession of a stolen vehicle, burglary, and felony possession of a firearm suggest that Defendant may pose a danger to others. On the other hand, Defendant appears to have taken a number of affirmative steps during his incarceration to improve and rehabilitate himself, as noted above. Moreover, because Defendant's release date is only approximately two months away regardless of whether the Court grants Defendant's motion, it is not clear to the Court that a reduced sentence, with supervised release, would result in any substantial increase in the danger posed to any person or community by Defendant. Finally, as discussed below, the Court may fashion appropriate conditions to any period of supervised release in order to mitigate any danger Defendant may pose. While this is a close case, in light of the above considerations, the Court concludes that Defendant does not pose a danger to any person or to any community such that his request for compassionate release cannot be granted.

### C.  Applicable 18 U.S.C. § 3553(a) Factors

Finally, the Court concludes that the applicable Section 3553(a) factors, some of which overlap with those under Section 3142(g) previously discussed, further support a reduction in Defendant's sentence. The Court has already noted, and balanced, the serious nature of the offenses for which Defendant is currently incarcerated, his prior criminal history, and the efforts he has undertaken to rehabilitate himself. Beyond these considerations, the Court concludes that a reduction in Defendant's sentence would not in any way downplay the seriousness of these offenses, fail to promote respect for the law, or fail to provide just punishment. As noted, only two months remain on Defendant's initial 204-month term of imprisonment (apparently adjusted for good conduct). Of the approximately 175 months Defendant is set to be in prison between the date of his arrest in May 2006 and his expected released date in December 2020, Defendant has served 173, representing 99% of his expected prison term. Accordingly, the purposes of Defendant's

sentence have been adequately fulfilled already and the reduction thereof would not result in any unwarranted sentence disparities for those convicted of similar offenses.

### D. Terms of Release

The Government requests that, if the Court grants Defendant's motion, that it impose a "substantial term of home confinement as a condition of supervised release." Gov. Opp. Br. at 7 n.2. The Court agrees that such a condition is warranted in this case. Though the Court has no authority to modify the conditions of a Defendant's imprisonment by ordering a transfer to home confinement, the Court, having already granted Defendant's motion for a reduction in his sentence, may impose conditions upon Defendant's supervised release, including a condition of home confinement. *Moore*, 2020 WL 4282747, at *8. As noted above, given Defendant's criminal history, and the seriousness of his offenses, the safety of the public remains a concern. Accordingly, the Court finds that home confinement serves as an adequate substitute for Defendant's imprisonment, and will impose home confinement as a condition of Defendant's supervised release for the length of time equal to the unserved portion of Defendant's term of imprisonment.

## III. CONCLUSION

For the reasons set forth above, Defendant's motion for compassionate release and a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 31, is **GRANTED**. As a condition of his supervised release, Defendant shall be placed under home confinement for the length of time equal to the unserved portion of Defendant's term of imprisonment. All other aspects of Defendant's original sentence remain unchanged. An appropriate Order follows.

*/s/ William J. Martini*

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 2, 2020**